UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RECOVERY RACING VIII, LLC, d/b/a GOLD
COAST ALFA ROMEO,

                    Plaintiff,

          v.

STELLANTIS US LLC f/k/a FCA US LLC, and FCA
REALTY LLC,

                    Defendant.

**Index No.:** 22-cv-7813

**COMPLAINT**

Plaintiff Recovery Racing VIII, LLC d/b/a Gold Coast Alfa Romeo ("Gold Coast") by its attorneys, ArentFox Schiff LLP, as and for its Complaint against Defendants Stellantis US LLC f/k/a FCA US LLC ("Stellantis") and FCA Realty LLC ("FCAR") alleges as follows:

## NATURE OF THE ACTION

1.      Gold Coast is an Alfa Romeo dealer located in Great Neck, New York. This action arises out of Stellantis's wrongful conduct in violation of the New York Franchised Motor Vehicle Dealer Act, Veh. & Tr. Law §§ 460 *et seq.* (the "Dealer Act") and Gold Coast's common law rights by: (a) instituting an unlawful customer satisfaction program that has penalized Gold Coast financially; b) utilizing inequitable and unfair performance standards and withholding wholesale price discounts from Gold Coast based on its inability to meet arbitrary objectives under those performance standards; c) implementing an unfair allocation system that has cost Gold Coast sales and profits; d) unlawfully withholding customer leads; e) unlawfully withholding wholesale price discounts for vehicles reported as loaner vehicles; f) breaching the implied covenant of good faith and fair dealings in the parties' Dealer Sales and Service Agreement (the "Dealer Agreement") by implementing a discriminatory and unfair customer satisfaction measurement process; and g)

1

breaching express terms of the Dealer Agreement by failing to provide adequate new motor vehicle inventory to Gold Coast.

2.     Gold Coast also brings an action against FCAR for negligence. As discussed in more detail below, FCAR's negligence caused Gold Coast to incur significant costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000 inclusive of interest and costs.

4.     This Court has personal jurisdiction over Stellantis pursuant to 18 U.S.C. § 1965(a). At all times material to this action, Stellantis operated, conducted, engaged in or carried on a business venture and conducted extensive business dealings in this State by selling Alfa Romeo motor vehicles and other products within the State of New York. Stellantis has committed the unlawful acts described below in this State.

5.     This Court has personal jurisdiction over FCAR pursuant to 18 U.S.C. § 1965(a). At all times material to this action, FCAR operated, conducted, engaged in or carried on a business venture and conducted extensive business dealings in this State by leasing and/or subleasing real property to dealers like Gold Coast within the State of New York. FCAR has committed the unlawful acts described below in this State..

6.     Venue is proper pursuant to 28 U.S.C. § 1391(a) in that jurisdiction is founded solely on the basis of diversity, and Stellantis and FCAR, by the virtue of their systematic and continuous business contacts in this District, including its contacts with Gold Coast, reside in this District.

## PARTIES

7.     Gold Coast is a limited liability company organized under the laws of the State of New York with its principal place of business at 732 Northern Boulevard, Great Neck, New York 11021 (the "Current Location").  Gold Coast was and still is engaged in the business of operating an automobile dealership selling and servicing, among other things, Alfa Romeo motor vehicles.

8.     Gold Coast was and is an authorized sales and service dealer of Alfa Romeo motor vehicles.  Gold Coast is a licensed "franchised motor vehicle dealer" as defined by Section 462(7) of the Dealer Act and the Dealer Agreement is a "franchise" as defined by Section 462(6) of the Dealer Act.

9.     Stellantis is a limited liability company, formerly known as FCA US LLC, organized and existing under the laws of the State of Delaware with its principal place of business in Auburn Hills, Michigan.  Upon information and belief, at all times hereinafter mentioned, Stellantis is the manufacturer and distributor for retail sale, through its authorized franchised dealers, of Alfa Romeo motor vehicles, parts and accessories.

10.     Stellantis is a "franchisor" within the meaning of Section 462(8) of the Dealer Act.

11.     FCAR is a limited liability company organized and existing under the laws of the State of Delaware. Upon information and belief, at all times hereinafter mentioned, FCAR leases and or/subleases real property in the State of New York to Stellantis dealers, such as Gold Coast.

## THE DEALER ACT

12.     The Dealer Act proscribes certain conduct by motor vehicle manufacturers and distributors (*i.e.,* franchisors) as unlawful and as unfair business practices. The prohibitions of the Dealer Act govern "notwithstanding the terms of any franchise contract." Veh. & Tr. L. § 463(2). The Dealer Act supplements, rather than supplants, any and all common law rights that motor

vehicle dealers otherwise have, as shown by the language of the Dealer Act and the unambiguous legislative intent behind the Dealer Act.

13.     Dealer Act Section 463(2)(g) prohibits a franchisor from selling or offering to sell "any new motor vehicle to any franchised motor vehicle dealer at a lower price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs." Any wholesale price discounts must be "reasonably available to all franchised motor vehicle dealers in the state on a proportionately equal basis."

14.     Dealer Act Section 463(2)(v) provides that:

> [It shall be unlawful for any franchisor to] use a CSI (customer satisfaction index) or other system measuring a customer's degree of satisfaction with a franchised motor vehicle dealer as a sale or service provider unless any such system is designated ad implemented in such a way that is fair and equitable to both the franchisor and the franchised motor vehicle dealer. In any dispute between a franchisor and a franchised motor vehicle dealer the party claiming the benefit of the system as justification for acts in relation to the franchise shall have the burden of demonstrating the fairness and equity of the system both in design and implementation in relation to the pending dispute. Upon request of any franchised motor vehicle dealer, a franchisor shall disclose in writing to such dealer a description of how that system is designed and all relevant information pertaining to such dealer used in the application of that system to such dealer.

15.     Dealer Act Section 463(2)(y) prohibits a manufacturer from using unfair and inequitable systems of allocating leads to dealers:

> [It shall be unlawful for any franchisor to] [s]ubject to the provisions of paragraph (w) of this subdivision, to sell or offer to sell or lease or offer to lease a motor vehicle other than to a franchised motor vehicle dealer in this state; provided, however, that this paragraph shall not apply to sales or leases of new motor vehicles made by a franchisor to its employees, immediate family members of employees, retirees or immediate family members of retirees which are hereby authorized notwithstanding the provisions of section four hundred fifteen of this title. Nothing in this paragraph shall prohibit

4

a franchisor from utilizing direct marketing designed to generate leads via mail, phone, or any other medium, provided that leads developed thereby are referred to the franchised motor vehicle dealers in this state and in proximity to the consumer pursuant to a fair and equitable system of allocating such leads or to the franchised motor vehicle dealer as specified by the consumer. The provisions of this paragraph shall not apply to franchisors of house coaches when the franchisor does not have any franchised house coach dealers in this state.

16.     Dealer Act Section 463(2)(gg) prohibits a manufacturer from using an "unreasonable, arbitrary or unfair performance sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchised agreement."

17.     Dealer Act Section 463(2)(jj) prohibits a franchisor from utilizing "a discriminatory, unreasonable, arbitrary or unfair system of allocation of new motor vehicle inventory."

18.     The New York Court of Appeals held in *Beck Chevrolet Co., Inc. v. General Motors LLC*, 27 N.Y.3d 379, 395 (2016) that, "To the extent [that the Dealer Act] makes unlawful certain franchisor abuses, 'notwithstanding the terms of any franchise contract,' this section abrogates contract principles which traditionally bind parties to their agreements."

19.     The Dealer Act creates a private right of action for injunctive relief and damages and provides for the award of attorney's fees:

A franchised motor vehicle dealer *who is or may be aggrieved* by a violation of this article *shall be entitled to sue for, and have, injunctive relief and damages* in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

*Id*. at § 469(a) (emphases added).

## FACTUAL ALLEGATIONS

### A.     Gold Coast and he Dealer Agreement

20.     Gold Coast is one of the largest Alfa Romeo dealers in the United States. For calendar year 2021, Gold Coast was ranked fourth in the United States for total sales.

21.     Gold Coast's performance is even more impressive considering that it is a relatively new Alfa Romeo dealer and Stellantis has hamstrung its ability to grow through lack of inventory and other unlawful practices.

22.     Gold Coast and Stellantis are parties to the Dealer Agreement, which authorizes Gold Coast to sell and service Alfa Romeo vehicles from its location in Great Neck.

23.     Section 12B of the Additional Terms to the Dealer Agreement requires Stellantis to "use commercially reasonable efforts to make Alfa Romeo vehicles and Alfa Romeo Products available" to Gold Coast.

24.     Section 18B of the Additional Terms purports to grant Stellantis the right to "evaluate [Gold Coast's] performance of its customer service obligations based on standards established by [Stellantis] from time to time."

### B.     Alfa Romeo's Quality Bonus Program

25.     For the 2022 calendar year, Stellantis implemented the "Alfa Romeo Quality Bonus Program" ("QBP").

26.     The QBP represents a shift in how vehicles are priced and sold. Over time, Stellantis has reduced the trading margin on vehicles while at the same time conditioning margin and wholesale price discounts on achieving arbitrary and unreasonable requirements such as QPB.

27.     Under the QPB, an Alfa Romeo dealer can earn a wholesale price discount equal to up to 7% of the vehicles MSRP less destination charges on eligible new Alfa Romeo vehicles sold, with payments of 7% tied to other performance standards discussed below.

6

28.     These wholesale price discounts average approximately $4,950 per vehicle sold.

29.     Gold Coast must meet the following thresholds (further explained below) in order to receive wholesale price discounts equal to up to 7% of MSRP less destination charges on eligible Alfa Romeo sales:



| Sales Experience Metric | Minimum Threshold | Payment |
|---|---|---|
| Connectivity | 80% | 1.0% |
| Vehicle Delivered No Issues | 80% | 1.0% |
| SSI Score | 970 / 980 | 1.0% / 2.0% |

| Service Experience Metric | Minimum Threshold | Payment |
|---|---|---|
| CTP | 3 | 0.5% |
| FFV | 92% | 0.5% |
| CSI Score | 915 / 930 | 1.0% / 2.0% |

30.     Even if the dealer achieves the Sales Qualifiers and Service Qualifiers, the dealer must still also achieve the minimum threshold for each Sales Experience Metric and Service Experience Metric to receive the corresponding wholesale price discount.

31.     If the dealer doesn't achieve each and every Sales Qualifier or Service Qualifier, the dealer forfeits all of the corresponding Sales Experience and Service Experience Metric wholesale price discounts.

32.     The QBP 2022 Calendar Year Program Rules state that "Meeting the Quality Bonus criteria does not result in any exceptions to, release, modification, or waiver of any of the requirements, terms, and conditions in the Dealer Agreement, as set forth in the Sales and Service Agreement Additional Terms and Provisions."

### 1.   Connectivity Sales Experience Metric

33.   In order to receive the 1% wholesale price discount for the "Connectivity" Sales Experience Metric, Gold Coast must enroll 80% of its sales customers in Alfa Romeo's Customer Connectivity telematics system ("Customer Connectivity").

34.   For example, if Gold Coast sells 100 Alfa Romeos in a month, it would have to enroll 80 of those customers in the Connectivity service.

35.   The enrollment process is confusing and not customer-friendly.

36.   Dealers like Gold Coast will activate the service by providing customer information to Stellantis.

37.   Once that information is provided, the customer is asked to enroll in a paid connectivity service requiring the customer to provide a credit card.

38.   Stellantis penalizes Gold Coast if the customer does not complete the enrollment process even if Gold Coast activates the service on 100% of the vehicles it sells.

39.   Enrolling in the program requires customers to provide personal data to Stellantis and many are hesitant to do so.

40.   Stellantis will continue solicit the customer without warning, and ask the customer for his or her credit card information, even though Gold Coast, and not Stellantis, has the business relationship with the customer.

41.   The 80% threshold applies to all dealers in the United States, regardless of customer preferences for these services in Gold Coast's market.

42.   Stellantis makes no adjustment to the Connectivity threshold whatsoever, let alone an adjustment to account for local consumer preferences and tastes.

    **2.**    **SSI Score Sales Experience Metric and CSI Score Service Experience Metric**

43.    Under the Sales Experience Metric component, Gold Coast must achieve a SSI score of 965 to receive a 1% wholesale price discount. If it achieves a SSI score of 975, then it receives a wholesale price discount equal to 2%.

44.    Under the Service Experience Metric component, Gold Coast must achieve a CSI score of 890 to receive a wholesale price discount of 0.5%, a score of 910 to receive a wholesale price discount of 1.0%, and a score of 920 to receive a score of 2.0%.

45.    The scores Alfa Romeo requires its dealers to achieve are significantly higher than Alfa Romeo's own customer satisfaction results. According to the 2022 JD Power CSI Study Review dated April 6, 2022, Alfa Romeo ranked 32 out of 32 brands for CSI.

46.    For Gold Coast, attaining wholesale price discounts under QBP is critical. It can mean the difference between being price competitive or non-competitive with other dealers and being profitable or unprofitable.

47.    Over time, Stellantis has shifted more and more of the dealers' trading margin from fixed amounts based off of the difference between MSRP and invoice to variable amounts the dealer may or may not receive in QBP.

48.    Dealers like Gold Coast therefore depend on QBP payments to maintain profitability and to allow them to compete on price with other Alfa Romeo dealers who receive the wholesale price discounts.

49.    If Gold Coast does not receive QBP payments, it is at a price disadvantage versus dealers who receive them and therefore cannot match the prices those dealers offer to customers.

50.    Stellantis uses customer surveys to determine Gold Coast's SSI and CSI.

51.     After a specific event, such as the sale of the vehicle or a service visit, or after a predetermined amount of time, Stellantis sends Gold Coast's customers a survey to complete. Depending on whether the survey is generated because of the sale or servicing of a vehicle, Stellantis sends the corresponding survey to the customer. Stellantis then scores the responses based on how the customers answer each question.

52.     Some questions are "yes/no," some questions are answered based on a range from 1-10, while others are answered by selecting "completely," mostly," "partially," or "not at all."

53.     While the surveys contain many questions, Stellantis only scores certain ones for determining Gold Coast's CSI and SSI attainment under the GBP.

54.     The customer, however, is not informed by either the CSI or SSI survey of the importance of responding to them, that Gold Coast receives money based on the scoring, or that some responses aren't scored at all.

55.     Gold Coast receives no credit for questions such as "how satisfied are you with your experience servicing your new vehicle dealer" and "how likely are you to recommend Dealer to friends and family."

56.     So if a customer gives Gold Coast the highest response for one of these questions, Gold Coast receives no credit for these answers nor any offset for a lower score on a question Stellantis counts.

57.     For questions that are answered based of a score from 1-10, Stellantis assigns a certain number of points which increase as the answer approaches "10."

58.     For example, the question "how would you rate the thoroughness of maintenance/repair work performed" is graded on a score from 1-10, with an answer of "10" being worth 90 points, an answer of "9" being worth 81 points and so on.

59.    For questions that are answered "completely, mostly," "partially" or "not at all," the scores range from 160 points for "completely" to 96 points for "mostly" and 0 points for "partially" or "not at all."

60.    So while the customer thinks he or she is giving Gold Coast a good score, the customer is unwittingly giving Gold Coast a bad to failing score.

61.    By giving Gold Coast no credit for some questions while giving credit (or penalizing) Gold Coast for others, both CSI and SSI are unfair and inequitable for Gold Coast.

62.    The questions Stellantis chooses to score or not score is completely arbitrary and do not meaningfully measure a customer's satisfaction with Gold Coast's sales process or customer service.

63.    These questions also do not account for Stellantis's inability to promptly provide parts for repairs or vehicle inventory for sale.

64.    For example, one question in Section 1 of the CSI survey asks how satisfied the customer is with his or her service experience. Since this question is unscored, Gold Coast receives no credit for the customer's positive response.

65.    Section 1 of the CSI survey also asks how likely the customer is to recommend Gold Coast to family and friends. The answer to this question does not count towards Gold Coast's overall score.

66.    On the other hand, questions that are scored include how well the dealership valued the customer's time during the service process and whether the vehicle settings returned to the customer the same as when the vehicle was brought in.

67.     Moreover, Stellantis will still punish Gold Coast even when Gold Coast can objectively prove that the customer answered the survey falsely or incorrectly or when Stellantis's own processes lead to customer dissatisfaction.

68.     For example, one of the questions is "did someone from the dealership contact you within 2 business days of taking your vehicle home to ensure that everything met your expectations?" The customer answers that question "yes/no," with Gold Coast receiving 120 points for a "yes" answer and 0 for a "no."

69.     Even if Gold Coast can prove that it indeed contacted the customer within 2 business days, Stellantis will not reverse a customer's answer of "no."

70.     The following example illustrates this issue. Suppose Mr. Jones buys an Alfa Romeo from Gold Coast for his wife Mrs. Jones. She's the sole point of contact with Gold Coast when she brings it in for service. Yet Stellantis will send the survey to Mr. Jones since he is the owner of record. Even if Gold Coast can prove it contacted Mrs. Jones within 2 business days, if Mr. Jones answers the survey "no" Gold Coast is penalized.

71.     Stellantis's surveys, and its refusal to rescore answers when Gold Coast proves the customer responded in error, highlight the unreasonableness and inequity in the CSI and SSI surveys.

**3.     FFV**

72.     Another Service Experience Metric is "FFV," which stands for "Fixed First Visit."

73.     If at least 92% of Gold Coast's customers respond "yes" to the corresponding FFV question on the CSI survey, then Stellantis pays Gold Coast a payment of 0.5%.

74.     Stellantis does not allow Gold Coast to exercise its own judgment in repairing a vehicle, Instead, Gold Coast must contact Stellantis and follow its repair procedure to the letter.

75.     If it does not, Gold Coast is at risk of Stellantis rejecting the warranty claim and therefore receiving no compensation for the repair.

76.     Gold Coast therefore has no choice but to follow Stellantis's repair procedure even when it knows it will not fix the customer's vehicle.

77.     Stellantis also penalizes Gold Coast if another dealer fails to properly repair a vehicle.

78.     For example, if the customer has the vehicle repaired at Dealer A, and then goes to Gold Coast for service because Dealer A didn't properly repair the vehicle and answers "no" on the FFV question, then Gold Coast gets a 0.

79.     Stellantis also pressures dealers to return vehicles to customers with repairs incomplete in order to minimize the time the vehicle is in the shop for purposes of calculating days out of service under the New York Lemon Law.

80.     When the customer returns to have the repair completed and then answers the FFV question as "no," Gold Coast is punished for following Stellantis's directives.

81.     The FFV question therefore does not measure what it purports to measure: whether Gold Coast fixes the customer's vehicle on the first visit.

82.     Instead, it measures whether Stellantis's repair procedure, when followed to the letter, will fix the customer's vehicle (which it often won't).

83.     Yet even when it follows Stellantis's procedure to the letter, Gold Coast is penalized if that doesn't result in a fixed vehicle.

84.     Like the other questions on the CSI and SSI surveys, the fixed right the first time question does not fairly or accurately measure customer satisfaction with Gold Coast.

C. **Alfa Romeo's Unlawful Allocation System**

85.     In addition to utilizing unfair and inequitable systems to measure customers' satisfaction with Gold Coast, Stellantis utilizes an inequitable and unfair allocation system.

86.     Manufacturers like Stellantis claim to allocate new inventory based on a formula comparing the dealer's sales rate with its current available inventory.

87.     As a general illustration, if a dealer sold 30 vehicles in a particular month and has 60 vehicles available at the end of the month, the dealer's days' supply is 60.

88.     In theory, dealers with a lower days' supply of a given model are supposed to receive new inventory ahead of dealers with a higher days' supply.

89.     However, upon information and belief, Stellantis reserves a significant portion of its available production for discretionary allocation awarded to dealers at the whim of Stellantis executives.

90.     Stellantis's discretionary allocation system results in two classes of dealers: those that receive adequate inventory and can therefore remain profitable and those who do not and cannot attain profitability.

91.     Throughout calendar year 2021, Gold Coast consistently received proportionately less vehicles than other Alfa Romeo dealers in New York.

92.     Alfa Romeo of Westbury, for example, never seemed to struggle with the inventory shortages Gold Coast did. It often had hundreds of vehicles available for sale versus Gold Coast, which averaged less than 45 vehicle available at any given time.

93.     Gold Coast's allocation momentarily improved when it participated in fleet sales that Stellantis encouraged its dealers to do with Enterprise Rent-a-Car. However, those sales should never had any impact on Gold Coast's allocation since Stellantis allegedly excludes fleet sales from its allocation formula.

14

94. On information and belief, Stellantis unfairly allocates vehicles to favored dealers such as Alfa Romeo of Westbury so they would have vehicles to sell while Gold Coast did not.

95. Stellantis's unfair allocation system also creates a "feast or famine" scenario. There are times when Stellantis creates a glut in Gold Coast's inventory by shipping too many vehicles at once.

96. During these periods, Gold Coast receives far more vehicles than sales warrant, causing it to have too much inventory at one time.

97. These inventory gluts result in additional carrying costs and reduced future allocation.

98. The inventory gluts also decimate Gold Coast's profitability because interest charges on carrying the excess inventory exceed the dealership's profits.

99. During the times of inventory "famine," Stellantis would allocate little to no inventory, leaving it with virtually no vehicles to sell.

100. These periods resulted in less sales for Gold Coast and leaving it without enough income to pay its expenses.

101. Because of Stellantis's unfair allocation system, Gold Coast struggles to grow its sales and stay profitable, let alone maintain its relative sales rank and inventory levels with other Alfa Romeo dealers.

### D.     Alfa Romeo's Unlawful Allocation of Leads

102. Section 463(2)(y) of the Dealer Act prohibits Stellantis from selling vehicles directly to customers in New York.

103. Even though it cannot sell vehicles directly to customers in New York, Stellantis collects inquiries from customers concerning Alfa Romeo vehicles and refers these "leads" to dealers like Gold Coast.

104.    These leads are generated by mail, phone, or other mediums.

105.    Despite the fact that Gold Coast is entitled to receive all leads Alfa Romeo generates from customers that are in proximity to Gold Coast, Stellantis has refused to provide the leads to it.

106.    Stellantis is withholding the leads because Gold Coast has refused to sign a Data Exchange and Electronic Agreement (the "Data Agreement").

107.    The Data Agreement is an adhesion contract, which Stellantis will not modify.

108.    The Data Agreement requires Gold Coast to share unprecedented levels of valuable customer data with Stellantis that it would not otherwise be obligated to share.

109.    It also includes many one-sided provisions concerning indemnification, warranties and representations, and retention of data after the expiration or termination of the Data Agreement.

110.    For example, upon the termination of the Data Agreement, Gold Coast is required to destroy all data it obtains from Stellantis but Stellantis can keep all of the data it obtains from Gold Coast.

111.    The Data Agreement also grants Stellantis a right, title and interest in Gold Coast's data, while only granting Gold Coast the right to access Stellantis's data for defined purposes.

**E.    Alfa Romeo's Unlawful Withholding of Wholesale Price Discounts on Loaner Vehicles**

112.    Stellantis provides certain wholesale price discounts to dealers participating in its loaner vehicle program known as "CTP."

113.    Dealers receive a $2000 wholesale price discount on every loaner vehicle under the CTP.

114.    Prior to January 2022, a dealer could not sell a vehicle placed in CTP to a consumer unless the dealer: a) kept the vehicle in the CTP for at least 30 days; **or** b) the vehicle had 2,000 miles on its odometer from use as a loaner.

115.    If the dealer did so, Stellantis would charge back the $2000 wholesale price discount on each vehicle.

116.    On or around January 2022, Stellantis changed the CTP requirements to make them more onerous. Under the new requirements, a dealer cannot sell a CTP vehicle until the vehicle has been in the CTP program for at least 30 days **and** the vehicle has at least 2,000 miles on its odometer from use as a loaner.

117.    If the dealer does not comply with the requirements, Stellantis allegedly charges back the $2000 wholesale price discount.

118.    However, on information and belief, Stellantis allows favored dealers in New York to place vehicles in the CTP program, receive the $2000 wholesale price discount, and sell the vehicle without following the stated rules or receiving a chargeback of $2000 per vehicle.

119.    By flipping the vehicle shortly after putting it in the CPT program, favored dealers in New York can sell vehicles for at least $2000 less than Gold Coast without having to incur costs from maintaining the vehicle as a loaner.

120.    Stellantis has not permitted Gold Coast to retain the $2000 per vehicle wholesale price discount on vehicles taken out of CTP too early.

**FIRST CAUSE OF ACTION**
**(Violation of § 463(2)(g) of the Dealer Act against Stellantis - QBP)**

121.    Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

122.    QBP is a "sales promotion[] or program[]" as those terms are used in Section 463(2)(g).

123.     QBP results in Stellantis selling a new Alfa Romeo vehicle to a qualifying dealer at a lower price than it does to a non-qualifying dealer.

124.     Because Gold Coast does not receive the QBP wholesale price discount, it cannot match the competing dealer's price who receives the payment and remain profitable.

125.     QBP is not reasonably available to Gold Coast on a proportionally equal basis.

126.     Section 469 of the Dealer Act establishes a private right of action for violations thereof, and entitles aggrieved dealers to money damages and/or injunctive relief.

127.     As a result of Stellantis's violation of Section 463(2)(g) of the Dealer Act, Gold Coast has sustained and will sustain substantial damages in an amount to be determined at trial.

128.     Gold Coast is also entitled to an injunction prohibiting Stellantis from utilizing QBP in the State of New York and from withholding any wholesale price discounts based on that metric.

129.     Pursuant to Section 469 of the Dealer Act, Gold Coast is further entitled to an award against Stellantis of necessary costs and disbursements plus reasonable attorney's fees.

### SECOND CAUSE OF ACTION
### (Violation of § 463(2)(g) of the Dealer Act against Stellantis - CTP)

130.     Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

131.     CTP is a "sales promotion[] or program[]" as those terms are used in Section 463(2)(g).

132.     CTP results in Stellantis selling a new Alfa Romeo vehicle to a qualifying dealer at a lower price than it does to a non-qualifying dealer.

133.     Because Stellantis unfairly and arbitrarily enforces the CTP requirements, Gold Coast does not receive the CTP wholesale price discount, resulting in a $2000 per vehicle price disadvantage versus favored dealers in New York.

134.    Stellantis has charged back the $2000/vehicle wholesale price discount for infractions by Gold Coast when it does not do the same for favored dealers in New York.

135.    The CTP wholesale price discount is not reasonably available to Gold Coast on a proportionally equal basis.

136.    Section 469 of the Dealer Act establishes a private right of action for violations thereof, and entitles aggrieved dealers to money damages and/or injunctive relief.

137.    As a result of Stellantis's violation of Section 463(2)(g) of the Dealer Act, Gold Coast has sustained and will sustain substantial damages in an amount to be determined at trial.

138.    Gold Coast is also entitled to an injunction prohibiting Stellantis from unfairly enforcing CTP requirements against it.

139.    Pursuant to Section 469 of the Dealer Act, Gold Coast is further entitled to an award against Stellantis of necessary costs and disbursements plus reasonable attorney's fees.

## THIRD CAUSE OF ACTION
### (Violation of § 463(2)(v) of the Dealer Act against Stellantis)

140.    Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

141.    Section 463(2)(v) of the Dealer Act requires all customer satisfaction indexes, or other systems measuring a customer's degree of satisfaction, to be designed and implemented in such a way that is fair and equitable to both the franchisor and franchised motor vehicle dealer.

142.    Stellantis has withheld wholesale price discounts under the QBP otherwise due and owing to Gold Coast because it did not achieve the unfair and inequitable standards under CSI and SSI.

143.    CSI and SSI are "CSI…or other system measuring a customer's degree of satisfaction with a franchised motor vehicle dealer as a sale or service provider" within the meaning of the Dealer Act.

144. Both SSI and CSI are unfair and inequitable both in their design and implementation.

145. Under Section 463(2)(v), Stellantis has the burden of demonstrating the fairness and equity of CSI and SSI both in design and implementation.

146. In addition to the foregoing, FFV is an unreasonable and inequitable in design and implementation.

147. Section 469 of the Dealer Act establishes a private right of action for violations thereof, and entitles aggrieved dealers to money damages.

148. As a result of Stellantis's violation of Section 463(2)(v) of the Dealer Act, Gold Coast has sustained and will sustain substantial damages in an amount to be determined at trial.

149. Gold Coast is also entitled to an injunction prohibiting Stellantis from measuring customer satisfaction through CSI, SSI or FFV and from withholding any wholesale price discounts based on achieving those metrics.

150. Pursuant to Section 469 of the Dealer Act, Gold Coast is further entitled to an award against Stellantis of necessary costs and disbursements plus reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**
**(Violation of § 463(2)(y) of the Dealer Act against Stellantis)**

151. Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

152. Section 463(2)(y) of the Dealer Act prohibits manufacturers like Stellantis from selling vehicles directly to customers in New York.

153. Section 463(2)(y) includes a carve out for "leads" that are allocated in a "fair and equitable system" based on customer proximity to a particular dealer or customer preference.

154. Stellantis collects information from customers and provides that information to dealers in New York.

20

155.    This information is a "lead" within the meaning of Section 463(2)(y) of the Dealer Act.

156.    Stellantis is withholding leads from Gold Coast that it would otherwise receive based on customer proximity or preference because it has not signed the Data Agreement.

157.    Requiring Gold Coast to sign the Data Agreement in return for leads is an unfair and inequitable allocation system that violates Section 463(2)(y) of the Dealer Act.

158.    Stellantis also distributes leads in other inequitable ways.

159.    For example, if a customer near Gold Coast searches for a particular vehicle that isn't in Gold Coast's inventory, rather than providing the lead to Gold Coast, Stellantis refers the customer to the dealership that has the vehicle regardless of whether the dealer is many miles away.

160.    Referring leads in this manner is even more prejudicial to dealers like Gold Coast since its heavily dependent on the dealership having the particular vehicle the customer is looking for.

161.    For Gold Coast, who suffers through cycles of "feast or famine" with inventory, it will not have the precise vehicle that the customer is looking for. Rather than refer the lead to Gold Coast and giving it the chance to sell another vehicle in inventory to the customer, buy the vehicle from another dealer, or order the vehicle from Stellantis, Stellantis refers the lead to another dealer.

162.    This practice is contrary to Stellantis's own directives to dealers like Gold Coast to encourage customers to order vehicles directly from the dealership or trading with another dealer who has the same or similar vehicle in stock.

163.    Stellantis is therefore not allocating leads in a fair and equitable system based on the customer's proximity to Gold Coast in violation of the Dealer Act.

164.    Section 469 of the Dealer Act establishes a private right of action for violations thereof, and entitles aggrieved dealers to money damages.

165.    As a result of Stellantis's violation of Section 463(2)(y) of the Dealer Act, Gold Coast has sustained and will sustain substantial damages in an amount to be determined at trial.

166.    Gold Coast is also entitled to an injunction prohibiting Stellantis from withholding leads from Gold Coast based on its refusal to sign the unfair Data Agreement.

167.    Pursuant to Section 469 of the Dealer Act, Gold Coast is further entitled to an award against Stellantis of necessary costs and disbursements plus reasonable attorney's fees.

### FIFTH CAUSE OF ACTION
### (Violation of § 463(2)(gg) of the Dealer Act against Stellantis)

168.    Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

169.    QBP is a "sales or other performance standard" as that term is used in Section 463(2)(gg) of the Dealer Act.

170.    QBP purports to measure a customer's "sales experience" and "service experience" with Gold Coast, and if Gold Coast does not achieve the thresholds, Stellantis penalizes it.

171.    QBP is an unreasonable, arbitrary, or unfair performance standard that fails to account for factors outside of Gold Coast's control.

172.    As explained above, each and every dealer in the United States must achieve the same Sales Experience Metric and Service Experience Metric thresholds regardless of whatever local conditions may impact their ability to achieve these objectives.

173.    Section 469 of the Dealer Act establishes a private right of action for violations thereof, and entitles aggrieved dealers to money damages and/or injunctive relief.

174.    As a result of Stellantis's violation of Section 463(2)(g) of the Dealer Act, Gold Coast has sustained and will sustain substantial damages in an amount to be determined at trial.

175.    Gold Coast is also entitled to an injunction prohibiting Stellantis from utilizing QBP in the State of New York to measure dealer performance and from withholding any wholesale price discounts based on that metric.

176.    Pursuant to Section 469 of the Dealer Act, Gold Coast is further entitled to an award against Stellantis of necessary costs and disbursements plus reasonable attorney's fees.

**SIXTH CAUSE OF ACTION**
**(Violation of Section 463(jj) of the Dealer Act against Stellantis)**

177.    Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

178.    Section 463(2)(jj) of the Dealer Act prohibits franchisors from utilizing a "discriminatory, unreasonable, arbitrary or unfair system of allocation of new vehicle inventory."

179.    Stellantis's method of allocating vehicles to Gold Coast is a "system of allocation of new vehicle inventory" within the meaning of Section 463(2)(jj).

180.    Stellantis's allocation system is discriminatory, unreasonable, arbitrary and/or unfair.

181.    Despite Gold Coast's best efforts, it consistently earns less allocation than competitors, such as Alfa Romeo of Westbury.

182.    On information and belief, Stellantis ignores its stated allocation system and instead allocated new vehicle inventory in substantial part based on a discretionary method concealed from the dealer network.  This results in favored dealers such as Alfa Romeo of Westbury being allocated a disproportionate amount of inventory compared to disfavored dealers like Gold Coast.

183.    As a result of Stellantis's unfair allocation system, Gold Coast has sustained substantial damages in an amount to be determined at trial.

184.    Stellantis also creates "feast or famine" scenarios whereby Gold Coast's inventory swings from little to no availability to a glut of inventory.

185.     Gold Coast is also entitled to an injunction prohibiting Stellantis from utilizing a discriminatory, unreasonable, arbitrary, or unfair allocation system in New York.

186.     Pursuant to Section 469 of the Dealer Act, Gold Coast is entitled to an award against Stellantis of necessary costs and disbursements, plus reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract and of the Covenant of Good Faith and Fair Dealing against Stellantis)

187.     Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

188.     The Dealer Agreement between Gold Coast and Stellantis constitutes a valid and enforceable contract between the parties.

189.     Gold Coast has fully performed its obligations under the Dealer Agreement, and Stellantis has not declared Gold Coast in breach of any of its obligations under the Dealer Agreement.

190.     Section 12B of the Additional Terms of the Dealer Agreement requires Stellantis to "use commercially reasonable efforts to make Alfa Romeo vehicles and Alfa Romeo Products available" to "Gold Coast."

191.     Stellantis has not used commercially reasonable efforts to allocate Alfa Romeo vehicles to Gold Coast in breach of the express terms of the Dealer Agreement.

192.     As a result, Gold Coast has lost sales and profits from insufficient vehicle allocation.

193.     Every contract in New York includes an implied covenant of good faith and fair dealings.

194.     This implied covenant applies to contractual provisions that afford one party discretion to act or not act.

24

195.     Under the implied covenant, even when a party has discretion to act or not act, it must exercise that discretion in good faith.

196.     Section 18B of the Additional Terms of the Dealer purports to grant Stellantis the right to "evaluate [Gold Coast's] performance of its customer service obligations based on standards established by [Stellantis] from time to time."

197.     Section 18B purports to grant Stellantis absolute discretion to measure Gold Coast's customer satisfaction using standards it, and it alone, establishes.

198.     To the extent the Dealer Agreement grants Stellantis discretion to measure Gold Coast's performance using standards Stellantis sets, the covenant of good faith and fair dealings requires Stellantis to act in good faith and fairly when implementing the standard and measuring Gold Coast's performance.

199.     Stellantis has breached the implied covenant by instituting an inequitable and unfair standards for measuring customer satisfaction (*i.e.*, CSI and SSI).

200.     Gold Coast has suffered, and will continue to suffer direct, general damages, as well as special, consequential damages, as a result of Stellantis's breach in an amount to be proven at trial but in excess of $75,000.

**EIGHTH CAUSE OF ACTION**
**(Negligence against FCAR)**

201.     Gold Coast repeats all of the forgoing allegations as if fully set forth herein.

202.     Before moving into the Current Location, Gold Coast operated from 90 Northern Boulevard, Great Neck, New York (the "Prior Location").

203.     Gold Coast and Stellantis agreed to the relocation of Gold Coast's operations from the Prior Location to the Current Location, with FCAR subleasing the Current Location to Gold Coast.

204.   Gold Coast and FCAR are parties to a Dealer Sublease dated December 4, 2019 (the "Sublease") for the Current Location.

205.   The Sublease purports to grant FCAR the right, in its "sole discretion" to "construct certain improvements" to the Current Location.

206.   FCAR contracted with other parties to make certain improvements to the Current Location.

207.   One of FCAR's agents negligently demolished a bathroom that he was not permitted to demolish.

208.   Because of the negligent demolition of the bathroom, renovations to the Current Location were delayed for up to a year.

209.   Because of these delays, Gold Coast could not relocate all of its operations to the Current Location as scheduled.

210.   Instead, it had to rent the Prior Location  while it was paying rent at the Current Location.

211.   FCAR owned a duty of care to Gold Coast, which was breached through the negligence of its agent.

212.   Gold Coast has suffered, and will continue to suffer direct, general damages, as well as special, consequential damages, as a result of FCAR's breach in an amount to be proven at trial but in excess of $75,000.

213.   These damages include, but are not limited to, Gold Coast having to pay rent at two separate locations and the pull ahead of a rent subsidy Stellantis was paying to the point it was exhausted prematurely.

214.   Gold Coast demands a jury trial as to all actions and claims so triable.

**WHEREFORE**, PLAINTIFF respectfully demands judgment as follows:

(a)     On the First Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from utilizing QBP in the State of New York and from withholding any wholesale price discounts based on that metric;

(b)     On the Second Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from unfairly applying CTP standards to charge back wholesale price discounts under the program to Gold Coast;

(c)     On the Third Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from measuring customer satisfaction through CSI, SSI or FFV and from withholding any wholesale price discounts based on achieving those metrics;

(d)     On the Fourth Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from utilizing QBP in the state of New York to measure dealer performance and from withholding any wholesale price discounts based on that metric;

(e)     On the Fifth Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from withholding leads based on Plaintiff's refusal to sign the Data Agreement;

(f)     On the Sixth Claim damages in an amount to be determined at trial and injunctive relief prohibiting Stellantis from utilizing a discriminatory, unreasonable, arbitrary, or unfair allocation system in New York;

(g)     On the Seventh Claim damages in an amount to be determined at trial;

(h)     On the Eighth Claim damages in an amount to be determined at trial;

(i)     For the value of the costs and disbursements that Plaintiff incurs in connection with this action, including the value of its attorneys' fees, as authorized under Section § 469 of the Dealer Act; and

(j)     For such other relief as the Court may seem just, proper and equitable.

Dated:   New York, New York                ARENTFOX SCHIFF LLP
         December 22, 2022

                                           By:   */s/ Russell P. McRory*
                                                 Russell P. McRory
                                                 Michael P. McMahan
                                                 Charles A. Gallaer
                                                 Daisy M. Sexton
                                                 1301 Avenue of the Americas, Fl. 42
                                                 New York, NY 10019
                                                 (212) 484-3900

                                           *Attorneys for Plaintiff*

                                           Of Counsel

                                           Elias C. Schwartz, Esq.
                                           The Law Firm of Elias C. Schwartz PLLC
                                           343 Great Neck Road
                                           Great Neck, NY 11021
                                           (516) 487-0175